# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

JERMAINE A. HOLLAND-EL

                                     *

Plaintiff                         *

v                                *          Civil Action No. PJM-10-1950

J. PHILIP MORGAN, *et al*.        *

Defendants               *
                                  ***

## MEMORANDUM

Pending is Defendants' Motion to Dismiss or for Summary Judgment. ECF No. 13. Although he was advised of his right to file a response in opposition to Defendants' motion and of the consequences of failing to do so, Plaintiff has not filed anything further in this case. *See* ECF No. 14. For the reasons that follow, Defendants' motion, construed as a Motion for Summary Judgment, shall be granted.

### Background

Plaintiff alleges that upon his arrival at Western Correctional Institution (WCI) he immediately notified staff about problems he was having with various gang members due to his giving information to intelligence officials while housed at different prisons. ECF No. 1 at p. 4. He claims as a result of the information he provided many of the gang members were either sent out of state, moved to maximum security, or assigned to administrative segregation. Plaintiff states he was stabbed twice in 2004 in retaliation for providing information.

On October 13, 2009, when Plaintiff arrived at WCI, he wrote to Lt. McKenzie, Lt. Molly, Warden Morgan, and Mr. Northcraft, stating that he was a target of a statewide hit. He explained that his step-brother, William D. Stewart and three others, killed someone at Maryland

House of Correction Annex (MHC-X) in 2002 in E-building, and he provided information regarding the murder to prison officials. He states he was a former high-ranking official in the "Black Guerilla Family" (BGF), but left the group and began providing information to prison officials in 2004. ECF No. 1 at p. 4. Plaintiff claims he told Murphy, Northcraft and Molly that the same inmates he had provided information about were in WCI and an "incident" would occur if he was not placed on protective custody. *Id*. at p. 5. Plaintiff states he received no reply from any of his letters, and Molly was the only one to acknowledge receipt of his letter. Plaintiff had been transferred to WCI from Jessup Correctional Institution (JCI) (formerly known as MHC-X) and he alleges the intelligence officer at JCI advised him to contact Molly when he arrived at WCI. *Id*. In light of the lack of response from his letters, Plaintiff states he filed an administrative remedy complaint (ARP), which was dismissed because it was viewed as pertaining to classification matters not addressable by an ARP.[1] ECF No. 1 at pp. 7—11.

Defendants state that Plaintiff was placed on administrative segregation when he was transferred from JCI to WCI, where he remained until November 13, 2009. ECF No. 13 at Ex. 2, p. 2 and Ex. 3. They further allege that there is no documentation supporting Plaintiff's claim that he expressed fear for his safety when he was assigned to administrative segregation. *Id*. at Ex. 3. The purpose of Plaintiff's placement on administrative segregation was to conduct an investigation into whether he would be suitable for assignment to general population. When the investigation was completed and nothing was uncovered that would contraindicate a general population assignment, Plaintiff was moved to general population. *Id*. at Ex. 5.

---

[1] Defendants note that Plaintiff's ARP was dismissed on the ground it concerned a matter that may not be addressed through the ARP process, but also argue that Plaintiff has failed to exhaust administrative remedies under 28 U.S.C. §1915. ECF No. 13 at pp. 15 – 16. The Court finds Defendants' assertions specious and inconsistent. Clearly exhaustion is not "available" where, as here, the subject matter of the claim has been excluded from the administrative grievance procedure. *See Moore v. Bennette*, 517 F. 3d 717, 725 (4th Cir. 2008) (defining "available" remedies).

Defendants further allege that Plaintiff has provided conflicting statements regarding his involvement with gangs. *Id*. at Ex. 3. For example, on May 9, 2006, Plaintiff was assaulted and claimed the assault was attributable to the gang, "Murder Inc." *Id*. at Ex. 6. Murder Inc. is the gang Plaintiff claimed his stepbrother was involved with when the stepbrother murdered another member of the gang. *Id*. Plaintiff was recommended for a transfer because he was assaulted by an unidentified assailant. *Id*. at Ex. 7.

On June 14, 2007, Plaintiff was placed on administrative segregation because he claimed he and his cell mate were threatened by the Bloods and "Dead Men Inc." (DMI). ECF No. 13 at Ex. 8. Later that same month Plaintiff claimed he was a member of the Crips and should not be housed with members of the Bloods. He further claimed that WCI was full of Bloods and he could not be housed at that institution. *Id*. at Ex. 8 and 9. Thus, Plaintiff was assigned to administrative segregation pending transfer to another medium institution because, in 2007, case management staff were led to believe he was a member of the Crips. *Id*.

Defendants admit that mail logs establish that Plaintiff wrote two letters to Security Chief Northcraft on October 19 and November 16, 2009; both letters were forwarded to Lieutenant Malloy. ECF No. 13 at Ex. 10. Plaintiff's letters indicated that he was no longer a member of a gang and that there was a contract on his life. *Id*. Malloy interviewed Plaintiff regarding his allegation and contacted Lt. Hamilton about Plaintiff's claims. Since Plaintiff had only provided general information about the BGF and other gangs, his claims were not verifiable. *Id*.at Ex. 11. Plaintiff has now been verified as a member of the prison gang, Gangland 19. *Id*.

Plaintiff was involved in an altercation with another inmate on April 8, 2010, and was charged with assault or battery on another inmate when he was seen exchanging closed-fist blows. ECF No. 13 at Ex. 12, p. 13. Plaintiff pled guilty to the charges on April 14, 2010, and

received a disciplinary segregation sentence of 150 days. *Id.* Plaintiff appealed the segregation sentence to Warden Morgan, requesting that his disciplinary segregation sentence be converted to long-term protective custody. *Id.* at p. 3. Plaintiff claimed that the same three inmates who assaulted him in 2006 "slept upstairs on the same tier" where he was housed when the fight occurred. He claimed his issues were with the BGF. Plaintiff's disciplinary sentence was affirmed by the warden. *Id.* at pp. 4—8.

Defendants note that Plaintiff's inconsistent claims regarding problems with various gangs, together with his admitted gang affiliations, make his placement on protective custody housing risky to other inmates assigned there to escape verified threats on their lives. ECF No. 13 at Ex. 3, Ex. 8, pp. 4—5, and Ex. 9. Once so assigned, Plaintiff could easily decide to resurrect his gang affiliation and "wreak havoc" on the protective custody population. *Id.* Defendants conclude that Plaintiff was assigned to general population at WCI on November 14, 2009, and has not communicated any threats on his life since that assignment. *Id.* at Ex. 1 and 2.

### Standard of Review

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest

upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**Analysis**

In order to prevail on an Eighth Amendment claim of failure to protect from violence, Plaintiff must establish that Defendants exhibited deliberate or callous indifference to a specific known risk of harm. *See Pressly v. Hutto*, 816 F. 2d 977, 979 (4th Cir. 1987). "Prison conditions may be restrictive and even harsh, but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective, any more than it squares with evolving standards of decency. Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer v. Brennan*, 511 U.S. 825, 833‒ 34 (1994) (citations omitted). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and

he must also draw the inference." *Id* at 837; *see also Rich v. Bruce*, 129 F. 3d 336, 339– 40 (4th Cir. 1997).

The undisputed facts establish that Plaintiff's claims were investigated and determined to be unfounded. Defendants do not have the requisite knowledge of a known risk of harm to Plaintiff. Moreover, there are legitimate penological concerns weighing against Plaintiff's assignment to protective custody, such as his admitted allegiance to several different gangs. There is nothing in the record to suggest that Defendants have been less than diligent in responding to Plaintiff's protests that he is at risk of assault. Defendants are, therefore, entitled to summary judgment in their favor. A separate Order follows.

February 28, 2011                               /s/
                                        PETER J. MESSITTE
                                 UNITED STATES DISTRICT JUDGE